## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF A.A. et al.,<br>　　　Plaintiffs, | CIVIL ACTION NO.<br>3:15-cv-1479 (JCH) |
| 　　v. | |
| UNITED STATES OF AMERICA,<br>　　Defendant and Apportionment<br>　　Plaintiff, | DECEMBER 28, 2016 |
| 　　v. | |
| WINDHAM COMMUNITY MEMORIAL<br>HOSPITAL et al.,<br>　　　Apportionment Defendants. | |

### RULING RE: MOTIONS TO DISMISS (Doc. Nos. 27, 38, 40, and 42) AND MOTION TO AMEND APPORTIONMENT COMPLAINT (Doc. No. 48)

## I.　INTRODUCTION

The plaintiffs, Estate of A.A., by its administrator Hugo Angeles, and Ar. A., a Minor, by her father and next friend Hugo Angeles, brought this Federal Tort Claims Act (FTCA) action against the defendant and apportionment plaintiff, the United States of America ("United States").  See Compl. (Doc. No. 1).  The plaintiffs allege negligence with regard to the conduct of Dr. Berett Shaps, M.D. ("Dr. Shaps") and Generations Family Health Center, Inc. ("Generations").  See id. ¶¶ 33, 57.

The United States filed an Apportionment Complaint (Doc. No. 23) against the apportionment defendants, Windham Community Memorial Hospital ("Windham Community"), Northeast Emergency Medicine Specialists ("Northeast"), Hartford Healthcare Corporation ("Hartford Healthcare"), Dr. Mark Dziedzic, M.D. ("Dr. Dziedzic"), Dr. Constantine Mesologites, M.D. ("Dr. Mesologites"), and the State of Connecticut Department of Children and Families ("DCF").  DCF, Dr. Mesologites, Dr.

1

Dziedzic, and Northeast have each moved to dismiss.  See DCF Mot. to Dismiss (Doc. No. 27), Dr. Mesologites Mot. to Dismiss (Doc. No. 38), Dr. Dziedzic Mot. to Dismiss (Doc. No. 40), Northeast Mot. to Dismiss (Doc. No. 42).  The Motions seek dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).  The United States has moved to amend its Apportionment Complaint to substitute as an apportionment defendant Thalia Mesologites, in her capacity as representative of the estate of Dr. Mesologites.  See Mot. to Amend (Doc. No. 48).

For the reasons that follow, DCF's Motion to Dismiss (Doc. No. 27) is **GRANTED**, Dr. Mesologites's Motion to Dismiss (Doc. No. 38) is **DENIED**, Dr. Dziedzic's Motion to Dismiss (Doc. No. 40) is **DENIED**, Northeast's Motion to Dismiss (Doc. No. 42) is **DENIED**, and the United States' Motion to Amend (Doc. No. 48) is **GRANTED**.

## II.    FACTUAL BACKGROUND[1]

This action arises out of the tragic death of A.A., a three-year-old child, as well as the injuries to her sister, Ar. A.  See Compl. ¶¶ 15–62.  The boyfriend of the mother of A.A. and Ar. A. caused the children's injuries, and caused A.A.'s death, by abusing A.A. and Ar. A.  See id. ¶¶ 32, 45, 55.

A.A. and Ar. A. were seen and treated at Generations, a federally-funded Community Health Center, by Dr. Shaps, a physician employed there.  See id. ¶ 15, 38; Apportionment Compl. ¶ 3.  A.A. and Ar. A. were also seen and treated by Dr. Dziedzic

---

[1] The court takes the facts from the Complaint and the Apportionment Complaint.  In adjudicating a Rule 12(b)(1), 12(b)(2), or 12(b)(6) motion to dismiss, the court accepts all factual allegations in a complaint as true and draws all reasonable inferences in the plaintiff's favor.  See Carter v. Healthport Techs., LLC, 822 F.3d 47, 56–57 (2d Cir. 2016) (discussing Rule 12(b)(1)); Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (discussing Ruling 12(b)(6)); Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (discussing Rule 12(b)(2)).

and Dr. Mesologites.  See Apportionment Compl. Count One ¶¶ 8–9.  Dr. Dziedzic and Dr. Mesologites worked for Windham Community, Northeast, and Hartford Healthcare. See id. at 1.

The plaintiffs allege that Dr. Shaps and Generations caused A.A.'s continued injuries and her death, and caused Ar. A.'s continued injuries, by failing to treat the girls' ongoing symptoms as signs of abuse.  See Compl. ¶¶ 33–35, 41, 57, 59.  These symptoms included significant facial bruising and black eyes.  See, e.g., id. ¶ 41.  The plaintiffs sue the United States, as the employer of Dr. Shaps and Generations.  See id. ¶¶ 7, 9.  The United States, in turn, alleges that A.A.'s and Ar. A.'s injuries were caused in whole or in part by the negligence of Windham Community, Northeast, Hartford Healthcare, Dr. Dziedzic, Dr. Mesologites, and DCF.  See Apportionment Compl. Count One ¶ 10, Count Two ¶ 10.

Ar. A was presented to Dr. Shaps at Generations with swelling and cuts on her lip, on September 23, 2011.  See Compl. ¶ 40.  On several occasions prior to October 18, 2011, Dr. Shaps examined A.A. and observed bruising.  See id. ¶ 16.  A.A. was then presented to Dr. Shaps with significant bruising on October 18, 2011.  See id. ¶ 15.  On that same day, a United States employee reported suspected child abuse to DCF.  See Apportionment Compl. ¶ 7.  At some point after October 18, 2011, A.A. was also examined or treated by Dr. Dziedzic, Dr. Mesologites, Windham Community, Northeast, and Hartford Healthcare.  See id. ¶ 8. On November 14, 2011, a federal program for children, Head Start, communicated to DCF that A.A. had repeated facial bruising.  See id. Count Two ¶ 9(e).  The next day, Dr. Shaps learned of reports that A.A. had new bruising, see Compl. ¶ 25, and Head Start communicated to DCF that A.A.'s further

3

bruising suggested child abuse, see Apportionment Compl. Count Two ¶ 9(f).  On

November 21, 2011, Head Start called DCF regarding Ar. A.'s unexplained black eye.

See id. Count Two ¶ 9(i).  At some point after November 21, 2011, Dr. Shaps learned

that Ar. A. had bruising and an injury to her eye and face.  See Compl. ¶ 48–49.

A.A. died on November 23, 2011.  See id. ¶ 31.  A.A. and Ar. A. remained in the

custody of their mother and their mother's live-in boyfriend up until A.A.'s death.  See id.

¶ 32, 56.

## III.   STANDARD OF REVIEW

### A.      Motions to Dismiss

#### 1.       Rule 12(b)(1)

A claim is properly dismissed "under [Federal Rule of Civil Procedure] 12(b)(1)

for lack of subject matter jurisdiction if the court lacks the statutory or constitutional

power to adjudicate it."  Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.,

790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks omitted).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either

facial or fact-based."  Carter v. Healthport Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).

When ruling on a facial Rule 12(b)(1) motion—one that relies on the facts alleged in a

complaint—the court accepts the allegations as true and draws all reasonable

inferences in favor of the plaintiff.  See id. at 56–57.  "The task of the district court is to

determine whether the Pleading alleges facts that affirmatively and plausibly suggest

that the plaintiff has standing to sue."  See id. at 56 (internal quotation marks and

brackets omitted).

2.      Rule 12(b)(2)

Upon a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendants.  See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84–85 (2d Cir. 2013).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 167–68 (2d Cir. 2015) (internal quotation marks omitted).  "A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2008) (citations, internal quotation marks, brackets, and ellipsis omitted).  The court "construe[s] the pleadings and affidavits in the light most favorable to the plaintiffs, resolving all doubts in their favor."  Dorchester, 722 F.3d at 85.

3.      Rule 12(b)(5)

Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process.  See Fed. R. Civ. P. 12(b)(5).  "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate."  Carney v. Horion Investments Ltd., 107 F. Supp. 3d 216, 223 (D. Conn. 2015) (internal quotation marks omitted).

4.      Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making

allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

    B.       <u>Motion to Amend</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that, "a party may amend its pleading [ ] with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15.  In considering whether to grant a litigant leave to amend, the court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice, and futility of the

6

amendment.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  "An amendment is futile
if the proposed claim could not withstand a motion to dismiss."  Brinn v. Syosset Pub.
Library, 624 F. App'x 47, 48–49 (2d Cir. 2015) (internal quotation marks and ellipses
omitted) (quoting Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir.
2002)).

## IV.   DISCUSSION

   A.         DCF Motion to Dismiss (Doc. No. 27)

   DCF moves to dismiss the action under Rules 12(b)(1) and 12(b)(6) of the
Federal Rules of Civil Procedure, as barred by sovereign immunity.  See DCF Mot. to
Dismiss at 1.

   In its Motion, DCF acknowledges that "Connecticut law provides a mechanism"
by which the state's Claims Commissioner may waive sovereign immunity by
authorizing a claim.  Id. at 6–7.  At the time DCF filed the Motion, the plaintiffs had not
received authorization to sue DCF.  See id. at 7–8.  On September 7, 2016, however,
the State of Connecticut Claims Commissioner, Christy Scott, authorized the plaintiffs to
"bring suit against the state for the claims and damages set forth in" the plaintiffs' three
notices of claim relating to A.A.'s death.  See Claims Commissioner Decision (Doc. No.
56-1) at 3.  Section 52-102b of the Connecticut General Statutes allows for
apportionment claims, except that, "[n]o person who is immune from liability shall be
made an apportionment defendant."  Conn. Gen. Stat. Ann. § 52-102b(c).  The United
States argues that, "[i]n light of this waiver of sovereign immunity, the State is not a
person who is 'immune from liability' for purposes of the apportionment act."  United
States' Second Supplemental Statement (Doc. No. 56) at 2.

DCF replies that the Claims Commissioner's Decision authorizes only a suit (1) by the plaintiffs (2) in state court.  See DCF Reply (Doc. No. 57) at 1.  DCF argues that the Decision does not authorize an apportionment claim against DCF (1) by the United States, nor (2) in federal court.  See id. at 2–3.

               1.          In Federal Court

DCF argues that Connecticut has only consented to suit in state court, without consenting to suit in federal court.  See DCF Reply at 3.  Indeed, "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."  College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999); see also Oliver v. Univ. of Connecticut Health Care, 292 F. Supp. 2d 398, 406 (D. Conn. 2003) ("[A] state may consent to suit in its own courts without consenting to suit in federal court.").  Thus, "a federal court should not infer that a state has consented to suit in federal court merely because it has waived its common law sovereign immunity in its own courts."  Cates v. State of Connecticut Dep't of Corr., No. 3:98-CV-2232 (SRU), 2000 WL 502622, at *9 (D. Conn. Apr. 13, 2000) (internal quotation marks omitted); see also Avoiding Sovereign Immunity: Consent or Waiver by the State, 13 Fed. Prac. & Proc. Juris. § 3524.4 (3d ed.).

The language of the Claims Commissioner Decision lacks any restriction as to in which court the suit may be brought.  See Claims Commissioner Decision at 3 ("[T]he claimants are authorized to bring suit against the state for the claims and damages set forth in the notices of claim.").  Nevertheless, DCF argues that the Claims Commissioner lacked power to authorize suit in federal court.  See DCF Reply at 2.  DCF points to section 4-160(d) of the Connecticut General Statutes, which states that,

when the Claims Commissioner authorizes a claim, "[t]he claimant shall bring such action [ ] in the judicial district in which the claimant resides or, if the claimant is not a resident of [Connecticut], in the judicial district of Hartford or in the judicial district in which the claim arose."  Conn. Gen. Stat. § 4-160(d).

This court agrees that the Claims Commissioner lacked the power to authorize suit by the plaintiffs directly against DCF in federal court.  Citing section 4-160(d), a judge in this District has stated that, "Connecticut law [ ] provides that the Claims Commissioner can only authorize suit in state court, not federal court."  Doe v. Barrett, No. 3:01-CV-519 (PCD), 2006 WL 3741825, at *7 (D. Conn. Dec. 19, 2006) (dismissing claim under Eleventh Amendment without waiting for Claims Commissioner decision); see also Reese v. Garcia, 68 F. Supp. 2d 131, 133 (D. Conn. 1999) ("[I]n order to sue the state pursuant to Connecticut General Statute § 4-160 . . . the state claims commissioner [ ] must [ ] authorize the bringing of such a suit in the state courts.") (emphasis added); Spartz v. State, No. CV-065002917, 2006 WL 2053877, at *1 (Conn. Super. Ct. July 11, 2006) ("The parties also agree that pursuant to General Statutes § 4-160(d), any action [ ] must be filed in state court [as opposed to federal court].").

Given that DCF could not be sued directly as a defendant in federal court, the question remains whether DCF may nonetheless be made an apportionment defendant in federal court.  In other words, the court must determine whether Connecticut's statute allowing apportionment against a person who is not "immune from liability," Conn. Gen. Stat. Ann. § 52-102b(c), in combination with the Claims Commissioner's authorization to the plaintiffs to sue in state court, constitutes a waiver of sovereign immunity for purposes of an apportionment action in federal court.

The court is unaware of any Connecticut case directly addressing whether authorization to sue under section 4-160 waives liability for purposes of the apportionment statute in state court only, or also in federal court.  However, a Connecticut Superior Court has held that federal defendants were "immune from liability" in state court for purposes of the apportionment statute, because the FTCA constituted only consent to suit in federal court.  See Hurdle v. Somanath, No. X02-CV-030176929S, 2004 WL 1050873, at *4 (Conn. Super. Ct. Feb. 25, 2004); cf. Mancini v. Gladstein, No. CV-940537086S, 1994 WL 721296, at *1 (Conn. Super. Ct. Dec. 13, 1994) (holding federal defendant "immune from liability" for purposes of Connecticut joinder statute because defendant could not be sued in state court).  Hurdle is thus consistent with an interpretation of the apportionment statute to only allow apportionment in the court system where the defendant has consented to suit.  See 2004 WL 1050873 at *4.  Such an interpretation of the apportionment statute would mean that DCF may not be apportioned into this federal case.

For a state to consent to suit in federal court, such consent must "be unequivocally expressed."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  Furthermore, Connecticut "statutes in derogation of sovereign immunity should be strictly construed.  Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity."  Miller v. Egan, 265 Conn. 301, 329 (2003) (internal quotation marks and ellipsis omitted).  If this court has any doubt as to whether Connecticut has consented to the apportionment of DCF in federal court, this court thus must conclude that Connecticut has not consented.

10

Here, the words, "[n]o person who is immune from liability shall be made an apportionment defendant," may reasonably be interpreted either (1) to allow apportionment of a state entity only in the specific court where the state has authorized suit, or (2) to allow apportionment of a state entity in any court, as long as the state has authorized suit in state court.  See Conn. Gen. Stat. § 52-102b(c).  This court cannot conclude that Connecticut has "unequivocally expressed" consent to suit in federal court, Pennhurst, 465 U.S. at 99, because of the multiple possible interpretations:  Any potential expression of consent is not unequivocal.  Furthermore, by "strictly constru[ing]" the "derogation of sovereign immunity" contained in sections 4-160 and 52-102b, a Connecticut court would likely conclude that the state has not consented to apportionment in federal court.  See Miller, 265 Conn. at 329.  For these reasons, the court concludes that DCF is immune from an apportionment suit in federal court.  This court thus must dismiss all claims against DCF.

2.      By the United States

DCF also argues that the United States cannot apportion DCF because the Claims Commissioner only authorized the plaintiffs to sue DCF and did not authorize the United States to apportion DCF.  Because all claims against DCF must be dismissed due to the lack of unequivocal consent to apportionment in federal court, the court does not address this argument.

DCF's Motion to Dismiss is **GRANTED**.  All claims against DCF are dismissed.

B.      Dr. Mesologites Motion to Dismiss (Doc. No. 38) and United States Motion to Amend (Doc. No. 48)

Dr. Mesologites moves to dismiss the apportionment action against him under

Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure for (1) failure to comport with section 52-190a of the Connecticut General Statutes by failing to obtain a valid "similar health care provider" opinion, and (2) lack of subject matter jurisdiction due to Dr. Mesologites being deceased.  See Mem. in Supp. of Dr. Mesologites Mot. to Dismiss (Doc. No. 39).

Relatedly, the United States moves to amend its Apportionment Complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure and Rule 7(f) of the Local Rules. The United States seeks leave to amend in order to substitute as an apportionment defendant Thalia Mesologites, in her capacity as fiduciary and legal representative of Dr. Mesologites's Estate, in the place of Dr. Mesologites.  See Motion to Amend at 1. The Apportionment Defendants object to the amendment, arguing that (1) the court lacks jurisdiction because Dr. Mesologites was deceased when served and (2) the Proposed Amended Apportionment Complaint (Doc. No. 48-1) would lack the required similar health care provider opinion regarding Dr. Mesologites.  See Response to Mot. to Amend (Doc. No. 52) at 1–2.

### 1.    Health Care Provider Opinion

Section 52-190a(a) requires that an apportionment complaint seeking damages for health care provider negligence must be accompanied by a certificate of the filing attorney's good faith belief that grounds exist for the apportionment action.  See Conn. Gen. Stat. § 52-190a(a).  In addition, "[t]o show the existence of such good faith, . . . the apportionment complainant's attorney[ ] shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c."  Conn. Gen. Stat. § 52-190a(a).

Subsection "52–184c(b) establishes the qualifications of a similar health care provider when the defendant is neither board certified nor in some way a specialist, and [subsection] 52–184c(c) establishes those qualifications when the defendant is board certified, trained and experienced in a medical specialty, or holds himself out as a specialist." Wilkins v. Connecticut Childbirth & Women's Ctr., 314 Conn. 709, 725 (2014) (internal quotation marks and brackets omitted).

With regard to health care providers who are not specialists in a particular field, section 52-184c(b) provides, inter alia, that,

> a "similar health care provider" is one who . . . is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

Conn. Gen. Stat. § 52-184c(b).

The Apportionment Defendants have submitted an affidavit stating that Dr. Mesologites was an emergency medicine physician and treated A.A. in his capacity as an emergency physician. See Aff. of Dr. Gregory Shangold, M.D. ("Shangold Aff.") (Doc. No. 39-2) ¶ 5. Attached to the Apportionment Complaint, however, is the opinion of a pediatrician, rather than the opinion of an emergency medicine physician. See Opinion Re. Dr. Mesologites (Doc. No. 23-3) at 1.

The pediatrician who wrote the opinion is board certified in both pediatrics and child abuse pediatrics. See id. at 1. According to the Affidavit submitted by the Apportionment Defendants, Dr. Mesologites did not treat A.A. in the capacity of a pediatrician, and he was not board certified in pediatrics. See Shangold Aff. ¶ 6. The Apportionment Complaint lacks any allegation that Dr. Mesologites is a pediatrician.

See Apportionment Compl. ¶ 9(f–k).  The United States argues that Connecticut law allows use of an opinion by a health care provider who is more qualified than the apportionment defendant.  See Response to Certain Hospital Defendants (Doc. No. 53) at 2.  Even if this is true, the health care provider who gives the opinion must also be "trained and experienced in the same discipline or school of practice" as the apportionment defendant.  Conn. Gen. Stat. § 52-184c(b).  The opinion regarding Dr. Mesologites is written by a physician who describes herself solely as having experience in pediatric medicine, without any discussion of experience in emergency medicine. See Opinion Re. Dr. Mesologites at 1.  The court cannot conclude that the opinion is of a health care provider "trained and experienced in the same discipline or school of practice" as Dr. Mesologites.  The Connecticut Appellate Court has held that the requirements of section 52-184c(b) are not satisfied where a defendant hospital treats a plaintiff in an emergency medicine capacity, but the opinion letter is written by a nurse who has experience in "acute, subacute, and long term nursing care."  See Bell v. Hosp. of St. Raphael, 133 Conn. App. 548, 552–53, 555 n.4. (2012).

The United States asserts that, "the relevant medical area is child abuse." Response to Certain Hospital Defendants at 2.  However, the United States then immediately admits that Dr. Mesologites is not a specialist in child abuse.  See id. at 2. Additionally, the pleadings give no reason to believe that Dr. Mesologites is "trained and experienced in" child abuse.  The court concludes that the Apportionment Complaint was submitted without the required similar health care provider opinion regarding Dr. Mesologites.

2.        Extension of Time to Obtain Health Care Provider Opinion

The United States has requested "a reasonable opportunity to secure and provide an additional medical opinion."  Response to Certain Hospital Defendants at 19 n. 8.  Such request implicates the time limit for service of process, given that the Connecticut statute requiring a similar health care provider opinion requires that the opinion be served with the complaint.  See Conn. Gen. Stat. § 52-190a(a) (requiring that complaint contain good faith certificate, and requiring that similar health care provider opinion be attached to good faith certificate); see also Morgan v. Hartford Hosp., 301 Conn. 388, 400–01 (2011) (holding that compliance with section 52-190a is "a precondition to effective service of process for the initiation of a medical malpractice action.").

The United States points to a decision in which a judge in this District concluded,

> that, because the Connecticut Supreme Court has held that the omission of a good faith certificate renders service of process ineffective, the district court should also treat the deficiency as a matter of insufficient service of process. Accordingly, a motion to dismiss for failure to serve a good faith certificate with a FTCA complaint should be made under Rule 12(b)(5), but the court may decline to dismiss the complaint and, pursuant to Rule 4(m), may instead set a time to serve the good faith certificate.

Slocum v. U.S. Dep't of Veterans Affairs, No. 3:13-CV-501 (SRU), 2014 WL 4161985, at *1 (D. Conn. Aug. 19, 2014).  Rule 4(m) of the Federal Rules of Civil Procedure states, inter alia, that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court [ ] must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Thus, Rule 4(m) gives a district court discretion to grant an extension for service of process, "even in the

absence of 'good cause.'"  Meilleur v. Strong, 682 F.3d 56, 61 (2d Cir. 2012).

The court in Slocum thus declined to dismiss a complaint that initially lacked the required good faith certificate.  See 2014 WL 4161985 at *4.  But see Freeman v. United States, 166 F. Supp. 3d 215, 221–22 (D. Conn. 2016) (acknowledging power to grant extension, but dismissing where plaintiffs failed to file certificate or to obtain sufficient information before filing, and where other grounds also existed to dismiss). Here, the Apportionment Complaint is accompanied by the required certificate, see Good Faith Certificate (Doc. No. 23-1), and a health care provider opinion to support the certificate, see Opinion Re. Dr. Mesologites, although the opinion is inadequate.  This court thus faces a clearer case than that in Slocum for allowing a Rule 4(m) extension. This court finds Slocum persuasive.

The Connecticut Supreme Court has stated that section "52-190a(c) requires the dismissal of medical malpractice complaints that are not supported by opinion letters authored by similar health care providers."  Bennett v. New Milford Hosp., Inc., 300 Conn. 1, 25 (2011); see also Conn. Gen. Stat. § 52-190a(c) ("The failure to obtain and file the written opinion required [ ] shall be grounds for the dismissal of the action."). The Connecticut Supreme Court rejected the argument that it "should interpret § 52-190a(c) to permit the free amendment of challenged opinion letters to ensure their compliance with the statute."  300 Conn. 1, 24–25 (2011).

The plaintiff in Bennett, however, had failed to take advantage of the state procedures for seeking leave to amend.  Id. at 30 n.17.  The Connecticut Supreme Court thus was "not presented with an opportunity to resolve a division in Superior Court authority concerning whether amendment of the defective pleading, including the

16

substitution of a new opinion letter for one that appears not to comply with § 52–190a(a)

[ ], is an appropriate response to a pending motion to dismiss pursuant to § 52–

190a(c)."  Id. at 30 n.17.  The Connecticut Appellate Court has since found that a state

trial "court should have granted the plaintiff leave to amend the complaint" where a

plaintiff originally attached a similar health care provider opinion that was inadequate,

but moved for leave to amend within the statute of limitations period.  Gonzales v.

Langdon, 161 Conn. App. 497, 508–09 (2015).

　　While it is unsettled whether Connecticut's "requirement of a certificate of good

faith in a medical malpractice action is a substantive or procedural requirement,"

Gallinari v. Kloth, 148 F. Supp. 3d 202, 207 n.1. (D. Conn. 2015) (internal quotation

marks omitted), the question of whether to grant leave to amend is a procedural matter,

see, e.g., Fed. R. Civ. P. 15.  Federal courts apply federal procedural rules when valid

and applicable.  See Hanna v. Plumer, 380 U.S. 460, 470–71 (1965).

　　　Furthermore, this court notes that, in state court, a plaintiff who provided an

inadequate similar health care provider opinion would be allowed to re-file the complaint

after dismissal.  See Bennett, 300 Conn. at 31 ("[T]he legislature envisioned the

dismissal as being without prejudice."); Gonzales, 161 Conn. App. at 519 ("If a medical

malpractice case is dismissed for lack of a legally sufficient opinion letter, the dismissal

is without prejudice."); see also Plante v. Charlotte Hungerford Hosp., 300 Conn. 33, 56

(2011) (stating that under certain circumstances, a plaintiff whose action has been

dismissed for failure "to provide an opinion letter that satisfies § 52–190a(a)"

nonetheless "may bring a subsequent medical malpractice action" pursuant to

Connecticut's accidental failure of suit statute.).  In federal court, Rule 4(m) allows a

court to decline to dismiss a complaint that has been ineffectively served, and to instead order that service be made within a specified time.  See Fed. R. Civ. P. 4(m).

While the text of Rule 4(m) references only the requirement that service of a complaint occur within 90 days of its filing, see Fed. R. Civ. P. 4(m) (beginning, "[i]f a defendant is not served within 90 days after the complaint is filed . . . "), a court in this District has interpreted Rule 4(m) to also allow an extension to the requirement, applicable to federal courts applying Connecticut law, that apportionment complaint service occur within 120 days of the return of summons for the underlying complaint. See Abbate v. Northland AEG, 788 F. Supp. 2d 50, 55 n.8 (D. Conn. 2011) (Haight, J.); see also Pennsylvania Mfrs. Indem. v. Cintas Fire Prot. & Fire Sys. of Springfield, No. 3:11-CV-650 (VLB), 2012 WL 3779140, at *7 (D. Conn. Aug. 30, 2012) ("[F]or purposes of § 52–102b, the analogous federal procedural equivalent to the state court's 'return date' is the date the summons for the complaint is returned to the district court."); Conn. Gen. Stat. § 52-102b(a) (requiring service of apportionment complaint within "one hundred twenty days of the return date specified in the plaintiff's original complaint.") Under Rule 4(m), this court grants an extension to both the requirements (1) that service of the Apportionment Complaint on Dr. Mesologites's estate representative occur within 90 days after its filing, and (2) that service of the Apportionment Complaint on her occur within 120 days after the return of summons for the underlying Complaint.[2]

The court therefore will not treat the present lack of a valid similar health care

---

[2] No other statute of limitations applies to the Apportionment Complaint.  See Conn. Gen. Stat. § 52-102b(b) ("[N]o statute of limitation [ ] shall be a defense or bar to [a] claim for apportionment [by a defendant.]"); see also Kim v. Convent of Sacred Heart, Inc., No. 3:95CV961 (AHN), 1998 WL 241213, at *2 (D. Conn. Apr. 17, 1998) (stating that Connecticut medical negligence statute of limitations is inapplicable in apportionment action).

provider opinion as a reason to dismiss, as long as the United States properly effects service—meaning with a valid similar health care provider opinion—on Dr. Mesologites's estate representative within 45 days of this Ruling.  By ordering the United States to come forth with a valid similar health care provider opinion, the court has disposed of one of the two arguments against amendment, namely, that the amended apportionment complaint would lack a valid similar health care provider opinion.

3.        Death of Dr. Mesologites

The Apportionment Defendants also assert that Dr. Mesologites is deceased, and have submitted a death certificate listing his date of death as October 30, 2015. See Death Certificate (Doc. No. 39-1).  The Complaint was filed before Dr. Mesologites's death, on October 13, 2015.  The Apportionment Complaint, however, was filed after Dr. Mesologites's death, on March 11, 2016.  The Apportionment Defendants argue that Dr. Mesologites's death constitutes a reason to dismiss all claims against him.  See Mem. in Supp. of Dr. Mesologites Mot. to Dismiss at 3.  The United States represents that it was not aware of Dr. Mesologites's death until after it filed the Apportionment Complaint.  See Motion to Amend at 1.

Dr. Mesologites's capacity to be sued is determined by the law of his domicile. See Fed. R. Civ. P. 17(b)(1) ("Capacity to sue or be sued is determined [ ] for an individual who is not acting in a representative capacity, by the law of the individual's domicile.").  The Death Certificate states that Dr. Mesologites's residence was in Connecticut.  See Death Certificate.  The court thus looks to Connecticut law to determine whether Dr. Mesologites may be sued.  The Apportionment Defendants cite

O'Leary v. Waterbury Title Co., 117 Conn. 39 (1933), for the proposition that Connecticut law does not allow suit against a person who is dead at the time the action is initiated.  See Mem. in Supp. of Mesologites Mot. to Dismiss at 3–4.  In O'Leary, the Connecticut Supreme Court found that an action is "null and void" if commenced against a defendant whom the plaintiff knew to be dead at the time of filing, and not against any of the decedent's heirs, representatives, or creditors.[3]  See 117 Conn. at 47.  The apportionment action thus cannot continue against Dr. Mesologites himself.

An estate's capacity to be sued is determined "by the law of the state where the court is located."  See Fed. R. Civ. P. 17(b)(3); In re Michaelesco, 288 B.R. 646, 653–54 (D. Conn. 2003).  This court thus looks to Connecticut law to determine whether Dr. Mesologites's estate representative has the capacity to be sued.  Under Connecticut law, while an estate itself lacks the capacity to be sued, an individual may be sued as the estate's representative.  See Geremia v. Geremia, 159 Conn. App. 751, 753 n.1 (2015); see also Conn. Gen. Stat. § 52-599 (providing for claim "against the executor or administrator of [a] deceased person" in certain situation).  Dr. Mesologites's estate representative thus has the capacity to be sued.

The United States argues that its apportionment claim against Dr. Mesologites should survive due to Connecticut's survival statute, section 52-599 of the Connecticut General Statutes.  See Response to Certain Hospital Defendants at 8–9.  "However, although state substantive law determines whether a claim survives death, . . . federal courts must apply federal rules, rather than [Connecticut's survival statute], in

---

[3] O'Leary does not address the possibility of substituting the decedent's estate representative. See 117 Conn. at 40–48.

determining the proper procedure for substitution following a party's death." <u>Falls v.</u>

<u>Novartis Pharm. Corp.</u>, No. 3:13-CV-270 (JBA), 2014 WL 3810246, at *2 n.3 (D. Conn.

Aug. 1, 2014), <u>appeal dismissed</u> (Dec. 4, 2014) (internal quotation marks omitted)

(quoting <u>In re Baycol Products Litig.</u>, 616 F.3d 778, 785 (8th Cir. 2010)); <u>see also</u> <u>Asklar</u>

<u>v. Honeywell, Inc.</u>, 95 F.R.D. 419, 424, 424 n.6 (D. Conn. 1982) (holding that Federal

Rule of Civil Procedure 25, rather than Connecticut's survival statute, governs

substitution time limit for federal claim—and stating that the same probably also applies

to state claims in federal court).  Where a defendant has died prior to suit, a federal

court applies Federal Rule of Civil Procedure 15, rather than state law, to decide

whether to allow amendment of a complaint to name the estate representative.  <u>See</u>

<u>Loudenslager v. Teeple</u>, 466 F.2d 249, 250 (3d Cir. 1972).

　　　　Having used state law to determine that Dr. Mesologites himself cannot be a

party to an action, but that his estate representative can be a party, this court thus looks

to federal law to decide whether to allow amendment of the Apportionment Complaint to

substitute Dr. Mesologites's estate representative.

　　　　Federal Rule of Civil Procedure 25 provides that, "[i]f a party dies and the claim is

not extinguished, the court may order substitution of the proper party."  Fed. R. Civ. P.

25(a)(1).  Additionally, under Rule 15, "a party may amend its pleading [ ] with [ ] the

court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ.

P. 15(a)(2).

> An amendment to a pleading relates back to the date of the
> original pleading when[ ] the amendment changes the party [ ]
> against whom a claim is asserted, if [the amendment asserts
> a claim that arose out of the conduct in the original pleading]
> and if, within the period provided by Rule 4(m) for serving the
> summons and complaint, the party to be brought in by

amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  Like Rule 25, Rule 15 may be used to substitute a new party.  See Staggers v. Otto Gerdau Co., 359 F.2d 292, 295–97 (2d Cir. 1966) (holding that court should allow amendment to substitute deceased plaintiff's estate representative, under both Rule 25 and Rule 15, even though representative failed to comply with Rule 25 time limit).  Furthermore, under Federal Rule of Civil Procedure 21, "[m]isjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add [ ] a party." Fed. R. Civ. P. 21.  The Third Circuit has held that a court should allow an amendment substituting the estate representative where the defendant died prior to suit, the plaintiff asserted that the estate representative had accepted service of the complaint, and the estate representative knew or should have known that, but for a mistake, the action would have been brought against him.  See Loudenslager, 466 F.2d at 250–51.

Similarly, the Northern District of New York recently substituted a defendant's estate where, unbeknownst to the plaintiff, the defendant had died before suit.  See Pilgrim v. Doe, No. 9:11-CV-1331 (GLS) (DEP), 2014 WL 4828091, at *1, *5 (N.D.N.Y. Sept. 29, 2014).  The death meant that timely service had not occurred—rather, the decedent's estate received service over a year and a half after the commencement of the action.  See id. at *1–2.  The court ruled that this lack of timely service did not constitute a reason to dismiss the action.  See id. at *2 (adopting recommended ruling). The court ruled that the plaintiff should be allowed to amend the complaint to join the

estate under Rules 15 and 21.  See id. at *3, *7.

In a case in the Southern District of New York, the court explained that,

> it may be appropriate to bring in [the] personal representative [of a defendant who died prior to the commencement of the action] by way of amendment of the complaint.  Although the action commenced against a dead person has been held to be a nullity, a crucial factor in such cases is whether the personal representatives sought to be brought in as a party had actual notice of the pendency of the action within the statutory period of limitations.  If, for example, it were to appear that the personal representatives of [a defendant] had actual notice of the pendency of the action before the expiration of the applicable Statute of Limitations, it would not be inappropriate for this Court to allow the amendment of the complaint to relate back to the date of its filing.

Conway v. Newburger, Loeb & Co., No. 71 CIV. 1508, 1974 WL 463, at *2 (S.D.N.Y. Nov. 25, 1974) (citations omitted).

Here, the United States represents that Dr. Mesologites's estate representative resided at the location where the United States attempted service on her deceased husband.  See Response to Certain Hospital Defendants at 2.  The estate representative thus received "such notice of the action that [she] will not be prejudiced in defending on the merits."  Fed. R. Civ. P. 15(c)(1)(C)(i).  Upon the arrival of the summons at her home, the estate representatives should have known that this "action would have been brought against [her], but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  This fact thus weighs in favor of allowing an amendment which will relate back to the date of the original Apportionment Complaint.

The court notes that the Eastern District of New York has dismissed claims because they were filed against two decedents.  See United States v. Callard, No. 11-CV-4819 (ADS) (ETB), 2013 WL 2022870, at *4 (E.D.N.Y. May 14, 2013).  However,

the Callard decision was based in part on the fact that the plaintiff (1) knew at the time of filing that one defendant was dead, (2) failed to discover the other defendant's death even though it had occurred decades before the suit, and (3) had "seemingly taken a patchwork approach to [the] case that ha[d] caused additional litigation."  Id. at *4. Here, (1) the United States did not know of Dr. Mesologites's death before filing the Apportionment Complaint, (2) Dr. Mesologites died only about four months before the Apportionment Complaint, and (3) the United States has not taken a patchwork approach to apportionment.  Callard is thus not on point.

The court also notes that a court in this District once speculated in a footnote that, where a defendant "died before the commencement of Plaintiff's present suit, Plaintiff's action against him may be subject to dismissal."  Patterson v. Rodgers, 708 F. Supp. 2d 225, 237 n. 20 (D. Conn. 2010) (emphasis added).  Patterson never actually reached the question of whether the defendant's death warranted dismissal.  See id. at 237 n. 20, 238.  Patterson cited a 1966 District of Maryland case holding that Rule 25 "'is not applicable to defendant who was dead at time suit was filed.'"  Id. at 237 n. 20 (citing Moul v. Pace, 261 F. Supp. 616, 618 (D. Md. 1966)).  Patterson did not discuss the applicability of Rule 15.  See id. at 237 n. 20.  Moul had held that Rule 15 did not apply to the facts of Moul because the party to be added had not received timely notice of the action.  See 261 F. Supp. at 618.  This court thus finds that the possibility of dismissal mentioned in the Patterson footnote does not apply here, where the estate

representative has received timely notice of the apportionment action.[4]

This court concludes that federal procedure allows for the amendment of the Apportionment Complaint to substitute Dr. Mesologites's estate representative in place of Dr. Mesologites.  Such an amendment will relate back to the date of the original Apportionment Complaint.  Therefore, this court will not treat Dr. Mesologites's death as grounds to dismiss, as long as an amended apportionment complaint is properly served on Dr. Mesologites's estate representative within 45 days of this Ruling.[5]

Dr. Mesologites's Motion to Dismiss is **DENIED**.  The United States' Motion to Amend is **GRANTED**.  The United States is **ORDERED** to docket an amended apportionment complaint, which shall consist of the Proposed Amended Apportionment Complaint (Doc. No. 48-1) (naming Thalia Mesologites in her capacity as Dr. Mesologites's estate representative) removing all claims against DCF, within 30 days of this Ruling.  The United States is **ORDERED** to properly serve Thalia Mesologites in her capacity as Dr. Mesologites's estate representative, attaching a valid similar health care provider opinion regarding Dr. Mesologites and the amended apportionment complaint

---

[4] Lastly, in 1968, a court in the Southern District of New York ruled that, where a plaintiff "was dead when the action for personal injuries was commenced, that action must be treated as a nullity and it cannot be given life by substituting parties and amending the complaint." Banakus v. United Aircraft Corp., 290 F. Supp. 259, 260 (S.D.N.Y. 1968).  The Tenth Circuit has distinguished Banakus by suggesting that Banakus's holding was determined partly by the facts that (1) the motion to substitute in Banakus was accompanied by a motion to add a claim for wrongful death, and (2) a procedure existed to allow the estate representative to bring a new suit, thus making substitution unnecessary.  See Esposito v. United States, 368 F.3d 1271, 1277 (10th Cir. 2004).  This court finds that Banakus is not on point for the reasons listed in Esposito.

[5] The United States asserts that Thalia Mesologites was served when abode service was attempted on Dr. Mesologites, because the two individuals resided at the same address.  See Response to Certain Hospital Defendants at 2.  However, for service to be valid, a summons must "be directed to the defendant." Fed. R. Civ. P. 4(a)(1)(B).  A summons directed to Dr. Mesologites was thus insufficient to serve process upon Thalia Mesologites, in her capacity as fiduciary and legal representative of Dr. Mesologites's Estate.  Furthermore, the initial attempt at service of process was not valid due to the lack of a proper similar health care provider opinion.  Thalia Mesologites thus must be served.

described above, within 45 days.  Dr. Mesologites's Motion to Dismiss may be renewed

if the United States fails to comply with this Order.

    C.         <u>Dr. Dziedzic Motion to Dismiss (Doc. No. 40)</u>

Dr. Dziedzic moves to dismiss under Federal Rules of Civil Procedure 12(b)(2)

and 12(b)(5).

    1.         Health Care Provider Opinion

Dr. Dziedzic has submitted an Affidavit stating that he is board-certified in

Emergency Medicine and treated A.A. in his capacity as a Board Certified Emergency

Medicine physician.  <u>See</u> Dziedzic Specialty Aff. (Doc. No. 41-2) at 3.  Section 52-

184c(c) of the Connecticut General Statutes thus applies:

> If the defendant health care provider is certified by the
> appropriate American board as a specialist . . . , a "similar
> health care provider" is one who: (1) is trained and
> experienced in the same specialty; and (2) is certified by the
> appropriate American board in the same specialty; provided if
> the defendant health care provider is providing treatment or
> diagnosis for a condition which is not within his specialty, a
> specialist trained in the treatment or diagnosis for that
> condition shall be considered a "similar health care provider".

Conn. Gen. Stat. Ann. § 52-184c(c).  Here, the health care provider opinion that the

United States attached to the Apportionment Complaint does not describe its preparer

as board-certified in emergency medicine.  <u>See</u> Opinion Re. Dr. Dziedzic (Doc. No. 23-

2) at 2 (describing author as board-certified in pediatrics and child abuse pediatrics).

The Connecticut Appellate Court recently dismissed a complaint against a board-

certified emergency medicine physician which had attached to it only an opinion by a

physician who was not board-certified in emergency medicine.  <u>See</u> <u>Helfant v. Yale-New</u>

<u>Haven Hosp.</u>, 168 Conn. App. 47, 58 (2016).  The court concludes that the United

States has failed to supply a similar health care provider opinion for Dr. Dziedzic.

Accordingly, the United States has failed to properly serve Dr. Dziedzic.

2.     Service Location

Dr. Dziedzic argues that service was also improper against him because he was served at his former residence, where he no longer lived at the time of service.  See Mem. in Supp. of Dr. Dziedzic Mot. to Dismiss (Doc. No. 41) at 5.  Dr. Dziedzic has submitted an affidavit stating that he has not lived at the address where service occurred since 2013.  See Dziedzic Service Aff. (Doc. No. 41-1) at 3.  The United States does not respond to this argument regarding service upon Dr. Dziedzic.  See Response to Certain Hospital Defendants at 1–21.  The fact that service was attempted at a location where Dr. Dziedzic no longer lived is an additional reason why Dr. Dziedzic has not been properly served.

Under Rule 4(m), this court grants an extension to the applicable time requirements for service of the Apportionment Complaint on Dr. Dziedzic.  The court will not treat the improper service on Dr. Dziedzic as a reason to dismiss, as long as the United States properly effects service within 45 days of this Ruling.

Dr. Dziedzic's Motion to Dismiss is **DENIED**.  The United States is **ORDERED** to effect proper service on Dr. Dziedzic within 45 days, including by attaching a valid similar health care provider opinion for Dr. Dziedzic and the amended apportionment complaint described above.  Dr. Dziedzic's Motion to Dismiss may be renewed if the United States fails to comply with this Order.

D.     Northeast Motion to Dismiss (Doc. No. 42)

Northeast moves to dismiss under Federal Rule of Civil Procedure 12(b)(2).

27

Northeast argues that Northeast should be dismissed from the case due to the United States' failure to provide a valid similar health care provider opinion for Dr. Mesologites or Dr. Dziedzic.  See Mem. in Supp. of Northeast's Mot. to Dismiss (Doc. No. 43) at 3.

Section 52-190a of the Connecticut General Statutes applies to any "apportionment complaint [ ] to recover damages resulting from personal injury or wrongful death . . . , in which it is alleged that such injury or death resulted from the negligence of a health care provider."  Conn. Gen. Stat. Ann. § 52-190a(a).  Thus, as long as the injury or death allegedly resulted from a health care provider's negligence, the statute on its face is not limited to only those claims against health care providers as defendants.  Indeed, "the requirements of § 52–190a(a) apply to claims of medical malpractice brought against institutional defendants."  Wilkins, 314 Conn. at 724.

> [W]hen a medical malpractice action is brought against an institution, the malpractice necessarily is committed by the institution's officers, employees or agents.  Accordingly, the "defendant health care provider" for purposes of § 52–184c is the person who allegedly committed the medical malpractice, not the person or institution that ultimately may be held liable for that malpractice.

Id. at 722–23.

Here, the Apportionment Complaint describes Dr. Mesologites and Dr. Dziedzic each as "employee, servant, and/or agent of" Northeast.  See Apportionment Compl. at 1–2.  The Apportionment Complaint's only plausible allegations against Northeast consist of allegations of medical negligence by Dr. Dziedzic and Dr. Mesologites.  See

id. Count One ¶ 9.[6]  In responding to Northeast's Motion to Dismiss, the United States does not make any arguments unique to dismissal of Northeast, but rather, argues that the health care provider opinions regarding Dr. Mesologites and Dr. Dziedzic were proper.  See Response to Certain Hospital Defendants at 14–20.

The court concludes that Northeast was never properly served, due to the lack of valid similar health care provider opinions for Dr. Mesologites and Dr. Dziedzic.  Under Rule 4(m), however, this court grants an extension to the applicable time requirements for service of the Apportionment Complaint on Northeast.  The court will not treat the improper service on Northeast as a reason to dismiss, as long as the United States properly effects service within 45 days of this Ruling.

Northeast's Motion to Dismiss is **DENIED**.  The United States is **ORDERED** to effect proper service on Northeast within 45 days, including by attaching valid similar health care provider opinions for Dr. Mesologites and Dr. Dziedzic and the amended complaint described above.  Northeast's Motion to Dismiss may be renewed if the United States fails to comply with this Order.

## V.    CONCLUSION

For the foregoing reasons, DCF's Motion to Dismiss (Doc. No. 27) is **GRANTED**, Dr. Mesologites's Motion to Dismiss (Doc. No. 38) is **DENIED** without prejudice, Dr. Dziedzic's Motion to Dismiss (Doc. No. 40) is **DENIED** without prejudice, Northeast's Motion to Dismiss (Doc. No. 42) is **DENIED** without prejudice, and the United States'

---

[6] The court notes that the Apportionment Complaint similarly describes Dr. Mesologites and Dr. Dziedzic each as "employee, servant, and/or agent of" Windham Community and Hartford Healthcare, see Apportionment Compl. at 1, and that the Apportionment Complaint contains identical allegations against Windham Community and Hartford Healthcare as against Northeast, see id. Count One ¶ 9 (referring collectively to "the Hospital defendants").

Motion to Amend (Doc. No. 48) is **GRANTED**.  As detailed above, the United States (1) is **ORDERED** to docket an amended apportionment complaint, which shall consist of the Proposed Amended Apportionment Complaint (Doc. No. 48-1) (naming Thalia Mesologites in her capacity as Dr. Mesologites's estate representative) removing all claims against DCF, within **30 days**, and (2) is **ORDERED** to effect proper service of the amended apportionment complaint described above, with valid similar health care provider opinions, on Dr. Mesologites's estate representative, Dr. Dziedzic, and Northeast, within **45 days** of this Ruling.

> **SO ORDERED.**

Dated this 28th day of December, 2016, at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge